IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY ANN NICHOLS, ) <br> ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> NATURMED, INC. d/b/a ) <br> INSTITUTE FOR VIBRANT LIVING, ) <br> ) <br> ) <br> Defendant. ) | Case No. 16 C 7356 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary Ann Nichols filed a five-count amended class action complaint against defendant based on her purchase of, and ultimate dissatisfaction with, one of defendant's products, All Day Energy Greens ("ADEG"). Plaintiff's amended complaint alleges: Breach of Implied Warranty under the Uniform Commercial Code ("UCC") and the Magnus-Moss Act (Count I); Breach of Express Warranty under the UCC (Count II); Consumer Fraud under Illinois law (Count III); Consumer Fraud under Arizona law (Count IV); and Unjust Enrichment (Count V). Defendant moved to dismiss under Rule 12(b)(6) for failure to state a claim on all counts. For the reasons described below, defendant's motion is denied.

## **BACKGROUND**[1]

Plaintiff purchased a two month supply of ADEG from defendant, an Indiana corporation with offices in Camp Verde, Arizona, for $59.99 in February 2016. Plaintiff alleges that ADEG was advertised, marketed and shipped from Arizona. Plaintiff further alleges that she made the

---

[1] The following facts are taken from plaintiff's complaint and are assumed to be true for purposes of this motion to dismiss. See Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995).

purchase in reliance on the advertising and labeling of ADEG. The label states that ADEG "naturally increases energy," "improves digestion," is "rich in antioxidant superfoods," and "promotes acid/alkaline balance." According to plaintiff, ADEG is sold at a premium price. Plaintiff attributes that premium price to the representations on ADEG's label. Plaintiff was dissatisfied with ADEG and attempted to return it, relying on defendant's "100% money back guarantee." Plaintiff's attempts were unsuccessful. She was unable to obtain defendant's authorization to return the product and was not issued a refund. Plaintiff alleges that "defendants make it difficult for anyone to get through to them, thwarting efforts to return the 'All Day Energy Greens' product."

Plaintiff further alleges that the representations on ADEG's label are claims that it affects the structure or function of the human body, and that the claims lack clinical support. Additionally, plaintiff alleges that "qualified experts" do not recognize ADEG as safe and effective for the stated uses and that defendant lacks substantiation that the representations are truthful and not misleading. Finally, plaintiff alleges that ADEG contains excessive amounts of lead, a fact that defendant has been aware of since 2012.

## DISCUSSION

**I. Legal Standard**

When ruling on a Rule 12(b)(6) motion to dismiss, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004). The pleading must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which the claim rests. Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 555 (2007). The allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the "speculative level." Id.

This standard demands that a complaint allege more than legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## II. Analysis

### A. Preemption

Defendant first argues that plaintiff's claims should be dismissed because they are preempted by federal law, specifically the Nutrition Labeling and Education Act[2] ("NLEA"), 21 U.S.C. § 341, et seq. The NLEA does contain a preemption provision, which reads in pertinent part:

> (a) Except as provided in subsection (b) of this section, no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce–
> (5) any requirement respecting any claim of the type described in Section 343(r)(1) of this title, made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title.

21 U.S.C. § 343–1(a)(5).

---

[2] The NLEA was enacted in 1990 and amended the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, et seq. "The NLEA was passed to 'clarify and to strengthen the [FDA's] legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about the nutrients in foods.'" Nutritional Health All. v. Shalala, 144 F.3d 220 (2d Cir. 1998) (citing H.R.Rep. No. 101–538, at 7 (1990)).

Plaintiff contends that, despite this provision, her claims are not preempted. The court agrees. The NLEA's preemption provision "has been repeatedly interpreted not to preempt requirements imposed by state law that effectively parallel or mirror the relevant sections of the NLEA." Jovel v. i-Health, Inc., 2013 WL 5437065, at *3 (E.D.N.Y. Sept. 27, 2013) (citing cases). "Thus, the NLEA contemplates state enactment and enforcement of labeling requirements as long as they are identical to or parallel NLEA requirements." Id.; see also Gubala v. CVS Pharmacy, Inc., 2015 WL 3777627, at *3 (N.D. Ill. June 16, 2015) (States can "enforce identical requirements, and thus enforce a violation of the FDCA as a violation of state law, because the FDCA does not create a private right of action.") (citing Turek v. Gen. Mills, Inc., 662 F.3d 423, 426 (7th Cir. 2011)). That is because "[t]he purpose of the NLEA is to prevent State and local governments from adopting inconsistent requirements with respect to the labeling of nutrients." Gubala, 2015 WL 3777627, at *3 (citation omitted). Consequently, the court must answer two critical questions: (1) what requirements the NLEA imposes on ADEG; and (2) whether plaintiff seeks to impose different or additional requirements. Id.

As for the first question, the parties agree that, under the NLEA, the representations on the ADEG label are "structure/function" claims. Such claims "describe[ ] the role of a nutrient or dietary ingredient intended to affect the structure or function in humans." 21 U.S.C. § 343(r)(6)(A). Structure/function claims need not be approved by the FDA, but companies that make these claims must have "substantiation that such statement is truthful and not misleading," and must include on the label a disclaimer that the product is not intended to "diagnose, treat, cure or prevent any disease." Id. at § 343(r)(6)(B)–(Cc). Plaintiff does not dispute that the label contains the required disclaimer. Rather, plaintiff alleges that defendant lacks substantiation that

4

the representations on the ADEG label are truthful and not misleading, as required by the NLEA. See id.

As for the second question, plaintiff alleges that the representations on the ADEG label lack substantiation that they are truthful and not misleading, as required by the NLEA. Because plaintiff's claims do not seek to impose labeling requirements that differ from or add to the requirements under the NLEA, they are not preempted by federal law. See Turek, 662 F.3d at 426; Gubala, 2015 WL 3777627, at * 3. Accordingly, the court denies defendant's motion on preemption grounds.

      **B.**      **Sufficiency and Plausibility of Plaintiff's Consumer Fraud Claims**

Defendant also argues that plaintiff's allegations are not plausible and that plaintiff's consumer fraud claims fail to meet Rule 9(b)'s heightened pleading standard. Taking the second argument first, the elements of a claim against a private party under the Illinois Consumer Fraud Act ("ICFA") are: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; (3) that the deception occurred in a course of conduct involving trade and commerce; and (4) actual damages to the plaintiff that were proximately caused by the deception. See 815 ILCS 505/2; Pearson v. Target Corp., 2012 WL 7761986, at *1 (N.D. Ill. Nov. 9, 2012). The Arizona Fraud Act contains similar requirements. See Ariz. Rev. Stat. Ann. § 44–1522. A complaint alleging fraud must comply with Rule 9(b). Bietsch v. Sergeant's Pet Care Products, Inc., 2016 WL 1011512, at *3 (N.D. Ill. Mar. 15, 2016). "To meet the particularity requirements of Rule 9(b), a complaint must specify the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Sears v. Likens,

5

912 F.2d 889, 893 (7th Cir. 1990). According to defendant, plaintiff has failed to satisfy Rule 9(b) because she has not adequately pled that defendant committed a deceptive act or employed a deceptive practice. Again, the court disagrees.

Plaintiff has sufficiently alleged that defendant made misrepresentations on the ADEG label, through which the misrepresentations were communicated to her, and that the misrepresentations were made prior to her purchasing ADEG. Plaintiff also attached copies of the alleged misrepresentations to the complaint and alleged that they "were pervasive and an integral part of the marketing of the product[ ]." According to plaintiff, she would not have purchased ADEG had it not been for the alleged misrepresentations and, despite her dissatisfaction with ADEG and defendant's 100% satisfaction guarantee, she was not reimbursed for the purchase price of ADEG because defendant intentionally thwarted her efforts to return it. These allegations satisfy Rule 9(b)'s requirements described above.

The court also disagrees with defendant's argument that plaintiff's allegations are not plausible. Taking all allegations as true and construing all facts in favor of the plaintiff, as the court must, plaintiff's claims are plausible. Plaintiff cites her own experience and an online "study" to support her allegations that defendant lacks substantiation that the representations made on the ADEG label are truthful and not misleading. Whether these allegations are in fact true is not an issue to be decided in a motion to dismiss. Pearson, 2012 WL 7761986, at *2.

Defendant also argues for dismissal of plaintiff's Illinois consumer fraud claim on the grounds that the ICFA does not apply because the statements on the ADEG label are authorized by federal law. This argument misses the point. If, as plaintiff alleges, the defendant lacks substantiation that the representations on the ADEG label are truthful and not misleading, they

do not comply with the NLEA and are not authorized by federal law.  The court rejects this argument and denies defendant's motion on these grounds.

        C.        **Plaintiff's Breach of Warranty Claims**

Defendant argues that plaintiff's breach of warranty claims should be dismissed because plaintiff failed to allege that defendant was provided pre-suit notice, as required by the UCC and Illinois law.  See Connick v. Suzuki Motor Co., Ltd., 174 Ill.2d 482, 492 (1996); U.C.C. § 2-607; ILCS 5/2-607(3)(a).  Again, the court disagrees.  Adequate notice "generally requires that the plaintiff contact the seller of the problem incurred with a particular product that he purchased." Maldonado v. Creative Woodworking Concepts, Inc., 296 Ill. App. 3d 935, 940 (3d Dist. 1998), as modified on denial of reh'g (June 12, 1998) (citing Connick, 174 Ill.2d at 492).  According to the complaint, plaintiff attempted to do just that, but was intentionally thwarted by defendant. Further, even if there were a delay in notification, when such delay "does not result in prejudice to the defendant, it is not generally viewed as unreasonable."  Id.  Taking plaintiff's allegations that she attempted in good faith to provide pre-suit notice, but was unable to do so as a result of defendant's actions, the court finds that any delay that may have occurred is not unreasonable.

As for plaintiff's claim that ADEG contains unsafe amounts of lead, it was unnecessary for plaintiff to provide pre-suit notice of the claim because plaintiff adequately alleges that defendant was put on notice of the lead content in ADEG as of November 30, 2012.  See Maldonado, 296 Ill. App. 3d at 940 ("Direct notice is unnecessary when [ ] the seller has actual notice of the defect in a product.").  Accordingly, defendant's motion as to plaintiff's breach of warranty claims is denied.

**D.     Plaintiff's Unjust Enrichment Claim**

Finally, defendant argues that plaintiff's unjust enrichment claim should be denied because it rests on the same improper conduct alleged in plaintiff's other claims. As defendant points out, "unjust enrichment will stand or fall with the related claim." Cleary v. Philip Morris Inc., 656 F.3d 511, 517 (7th Cir. 2011). In the instant case the unjust enrichment claim stands with the related fraud claim. Defendant's motion is denied.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is denied. Defendant is directed to answer the complaint on or before May 5, 2017. The parties are directed to file a joint status report using the court's form on or before May 12, 2017. The status hearing previously set for April 12, 2017, is continued to May 18, 2017, at 9:00 a.m.

**ENTER:      April 11, 2017**

_____
**Robert W. Gettleman
United States District Judge**